## HORATIO COOMES *et al. versus* WILLIAM BURT.

Under the provisions of the Revised Stat. *c.* 115, which prescribes the mode in
   which meadows may be improved by commissioners, upon the application of the
   proprietors, or the greater part of them in interest, the course of a stream may be
   changed, by the excavation of a new channel, for the purpose of draining the
   lower portions of a meadow and irrigating the more elevated portions, if such mode
   of improvement be for the general advantage of the proprietors, notwithstanding
   the meadow might be drained by other means. The fact that the stream has flowed
   in such course for more than twenty years, is immaterial, for the statute proceeds on
   the assumption that the respective proprietors have a good title to their respective
   lands and the easements annexed to them.

Where, in such case, the petition prayed, that the improvement might be made by
   diverting the stream from its course, " *commencing at the line between the lands*"
   of two of the respondents, it was *held*, that such petition was not upon its face void
   for uncertainty, it appearing that the petition set forth plainly the object to be
   accomplished, and the localities bearing upon the question of expediency being
   therefore matters of evidence on the hearing.

THIS was a petition to the Court of Common Pleas, (pursu-
ant to Revised Stat. *c.* 115,) in which the petitioners, Horatio
Coomes, Asa Colton and James Bliss, represented that they
were the major part in interest of the proprietors of certain
meadow lands in Longmeadow, watered by a small stream
which also ran through the lands of William Burt and Dimond
Chandler ; and that it would be beneficial to the lands of the
petitioners and all persons concerned, that such stream should
be diverted from its present course, " *commencing at the line
between the lands* of said William Burt and Dimond Chandler,
and run thence in a southerly direction near the base of the
hill east of said meadow, and parallel or nearly parallel with
the same, in a channel easterly of its present channel, through
and across the lands of said Chandler, Colton, Bliss and
Coomes successively, and intersect its present channel on the
land of said Coomes, near the road leading into the meadow so
called." The petitioners assigned as reasons for so diverting
the stream, that its present course was through the lower portions
of their lands, which were overflowed when the stream was
high, and thereby rendered boggy, and that their lands situated
on the easterly side of the stream being more elevated than the
stream, could not be watered by it when necessary ; both of
which objections to the present channel would be obviated by

the alteration proposed. Wherefore the petitioners prayed that commissioners might be appointed to effect such improvements and alterations.

At the hearing in the Court of Common Pleas, before *Williams* J., it was proved, that the lands of the petitioners might be drained by making ditches and channels therein, or otherwise, without diverting the stream from its accustomed course ; that the stream had entered and passed in and out of the meadow of Chandler, in its present channel, for more than twenty years last past, though its intermediate course had been changed within that time ; that the only mode of flowing the lands, proposed by the petitioners, was by changing the course of the stream, so that it would pass out of Chandler's meadow at a different point from where it had done for more than twenty years.

The respondents objected, that in such a case the statute did not authorize the proposed change and improvement to be made. But the judge overruled the objection, and being of opinion, that it would be useful to drain and flow the meadows in question, in the manner proposed, and that the improvements contemplated would be for the general advantage of the proprietors, ordered that the prayer of the petitioners should be granted.

The respondents excepted to the ruling of the judge ; and also to the petition itself, as being void for uncertainty.

*Willard* and *J. W. Newcomb*, for the respondents, to the point, that where a statute creates a new power and prescribes the mode of exercising it, such power can be exercised only in the manner pointed out by the statute, cited *Andover & Medf. Turnp. Corp.* v. *Gould*, 6 Mass. R. 40.

*Sept. 25th.*

*R. A. Chapman, Ashmun* and *H. Morris*, for the petitioners, cited *Gore* v. *Brazier*, 3 Mass. R. 540.

SHAW C. J. drew up the opinion of the Court. This case comes before the Court, by way of exceptions to the decision of the Court of Common Pleas, and the Court are therefore confined strictly to the questions of law arising upon the exceptions.

*May term 1840, in Hampden*

The first question is, whether the Court of Common Pleas put the right construction upon the Revised Stat. *c.* 115, in

deciding that it does authorize the contemplated improvement, by a change in the course of the brook as proposed. With the utility of this mode of making the improvement, and the judgment of the Court of Common Pleas upon its fitness and expediency, we have no concern.

The authority intended to be granted by these provisions of the Revised Statutes, following generally the statute of 1795, c. 62, is obviously very broad, and was probably intended to be so, in order that the measures to be adopted might be as various as the varying exigencies of different meadows and low lands might require. The first section provides, that when it shall be necessary or useful to drain or flow any meadow, swamp, marsh, beach or other low land, or to remove obstructions in rivers or streams leading therefrom, &c. This contemplates both species of improvement, viz. draining and flowing, and applies to every species of low land, to be benefited by either mode of treatment. The second section directs the mode of proceeding. The third section authorizes the court to decide whether the proposed improvements will be for the general advantage of the proprietors, that is, as we understand it, of all the proprietors, as well the respondents or persons not parties, as the petitioners. It also authorizes them, if they so find, to appoint commissioners, to cause the improvements to be effected. The fifth section authorizes the commissioners to cause dikes or dams to be erected on the premises and to order the land to be flowed thereby, and also to cause ditches to be opened on the premises, and obstructions in any rivers or streams leading therefrom to be removed.

There are various other provisions in the statute for assessing and apportioning the expenses, paying damages to parties injured by the exercise of certain powers, and other incidental regulations.

The statute manifestly regarded all the persons having a direct and common interest in the improvements, whether parties or not to the proceedings, to be a community or proprietary for some purposes, with common rights and subject to common burdens. The "premises," as mentioned in the statute, are all the meadows so situated as to partake of the benefits, or fall within the scope of the improvements. These are the lands upon

which the dikes and other works are to be placed, the ditches to be cut, and, generally, on which the improvements are to be made, and of which the owners, in their several proportions, are to be assessed for the expenses.

The power to open ditches on the premises, is given in gen eral and unqualified terms, and we see nothing in the other parts of the statute, which, either in terms or by implication, restrains or limits this power. Marshes and swamps upon an extensive level, may often be so situated as to render it highly useful to change the course of an old, sluggish and serpentine brook, for a strait canal in the same or a different direction, to accomplish the great object contemplated by the statute ; and if it were intended to restrain or qualify the power of the courts or of the commissioners, in this respect, it would have been done in plain and intelligible terms. We are of opinion, therefore, that the statute did authorize the mode of improvement, by changing the course of the brook, mentioned in the petition, if that mode was for the general advantage of the proprietors, and that the decision of the court in this respect was right.

It was contended, that as the statute, in terms, authorizes the removal of obstructions from rivers and streams, this was inconsistent with the supposition, that the course of such rivers and streams was to be changed, and that as authority to make one species of improvement was expressly given, others were by implication prohibited. But upon recurring to the statute, in all places where this express authority is conferred, it is an authority to cause obstructions to be removed from rivers and streams leading *from* the premises.

By the rules of the common law, all persons owning lands, drained by natural water-courses, have a right to the unobstructed use of those natural water-courses, for that purpose ; but no man has a right to cut a ditch or canal, that is, a new and artificial water-course, through his neighbour's land, to drain his own, without that neighbour's consent. The legislature, we think, had a just regard to these well known rights ; and therefore provided, that so far as the lands of the proprietors to be benefited, were concerned, treating them as owners of a common property and regarding the common and general

Coomes
v.
Burt.

benefit of all, such new canals or ditches might be cut, as the common interest might require. And so far as they had an interest in the water-course, leading from the premises, or lands to be benefited by the improvement, they should have, through the agency of the commissioners, the unobstructed enjoyment of this outlet. By this construction, the different parts of the statute harmonize with each other, and conduce to the advancement of the general purposes of the legislature.

It is stated in the exception, as a circumstance apparently relied on, to show that the court had no authority to order the alteration in the course of the brook, that, with certain exceptions, it had flowed in its present course more than twenty years. This statute goes on the assumption, that the respective proprietors have a good title to their respective lands and the easements annexed to them, and it is wholly immaterial whether those rights are held by grant, prescription or otherwise. The petition does not draw in question the respondent's right to the water-course, and to have it run as it has been accustomed to do. Independently of the statute, we are to assume, that this is his right. But the object of the statute is, to provide a mode of improvement, which will be beneficial to all the proprietors, not by taking away their beneficial rights, but by providing for another and more advantageous mode of enjoying them.

Another exception taken to the petition was, that it was void for uncertainty. We cannot say that this is so uncertain on the face of the petition as to be necessarily unintelligible. If the petition sets forth plainly the object to be accomplished, the localities bearing upon the question of expediency would be matter of evidence on the hearing. In *Mitchell* v. *Starbuck*, 10 Mass. R. 20, in partition, the Court refused to arrest the judgment, on the ground that the petition was too loose and uncertain, saying that it might be obviated by a plan and survey to be taken and returned by the commissioners. So here, we think the petition was sufficient to bring before the court and give notice to the parties interested, of the general object and purpose of the petitioners, and the subject to which it applied, and therefore is not, in point of law, void for uncertainty. A more definite statement of the localities might be

necessary on the hearing, to inform the judgment of the court, and, on the return of the commissioners, to regulate and fix the future rights of the parties in the premises.

*Exceptions overruled, and the judgment of the Court of Common Pleas affirmed. Case remitted to the Court of Common Pleas for further proceedings.*